BUSSEWITZ, Appellant, vs. WISCONSIN TEACHERS' ASSOCIATION and another, Respondents.

*October 20—November 17, 1925.*

*Libel and slander: Conditional privilege: Words used in pleading in action: Malice: Relevancy and pertinency: By whom determined: Republication in newspaper.*

1. Parties, counsel, and witnesses are exempt from liability for the use of defamatory words published or spoken in the course of judicial proceedings only where such statements are pertinent and relevant to the issues; and the question of the relevancy of such defamatory words is for the determination of the court and not for the jury.  p. 125.
2. Pleadings alleged to contain defamatory matter should be liberally interpreted in actions for libel when the question whether the allegations are pertinent or relevant is involved.  p. 125.
3. An allegation in an answer and a counterclaim, in an action for services rendered and money expended, that plaintiff "unlawfully and feloniously . . . converted to his own use from the funds of said defendant" a sum stated, is pertinent and relevant to the issues and hence absolutely privileged though false and malicious.  p. 127.
4. The question in an action for libelous or slanderous statements by parties, counsel, or witnesses is not whether the words spoken are true or actionable *per se,* but whether they were spoken in the course of judicial proceedings and were

relevant and pertinent to the cause or subject of inquiry, in determining which much latitude must be allowed to the judgment and discretion of those intrusted with the conduct of the cause.   p. 128.

5. An averment of the complaint in an action for libel that a counterclaim containing alleged defamatory statements, in a prior action by plaintiff against defendants, was published in newspapers, is irrelevant in the absence of an allegation that defendants were responsible for or connected with the publication.   p. 129.

APPEAL from an order of the circuit court for Milwaukee county: E. T. FAIRCHILD, Circuit Judge. *Affirmed.*

*Albert M. Kelly,* attorney, and *William H. Bennett,* of counsel, both of Milwaukee, for the appellant.

For the respondents there was a brief by *Hannan, Johnson & Goldschmidt* of Milwaukee, attorneys, and *Theo. W. Brazeau* of Wisconsin Rapids and *Whaley, Erikson & Paulsen* of Racine, of counsel, and oral argument by *Mr. Brazeau* and *Mr. Vilas H. Whaley.*

JONES, J.   This is an appeal by the plaintiff from an order of the circuit court for Milwaukee county sustaining the demurrers of the defendants to the plaintiff's complaint. The plaintiff alleged that he was engaged in educational work, was a member of the faculty of the Milwaukee state normal school, and engaged in lecturing; that the *Wisconsin Teachers' Association* is a Wisconsin corporation and that the defendant *Doudna* has been its secretary and employee; that the plaintiff commenced an action in the circuit court for Milwaukee county against the *Wisconsin Teachers' Association* to recover compensation for services rendered by him to it and to be reimbursed for money paid by him in its behalf; that said association filed an answer and counterclaim, verified by *E. G. Doudna,* which was published in the daily newspapers of the city of Milwaukee; that in one of the paragraphs of said answer and counterclaim the defend-

ants maliciously stated and published concerning the plaintiff the following false and defamatory matter, to wit:

"That during said calendar year of 1919, as this defendant is informed and verily believes, said plaintiff unlawfully and feloniously, and without authority from said defendant, converted to his own use from the funds of said defendant corporation the sum of fifty dollars ($50); that said plaintiff, as this defendant is informed and verily believes, refused to return or surrender the said sum of fifty dollars ($50) or any part thereof and still refuses and neglects so to do, and has converted and disposed of the same to his own use, to plaintiff's damage in the sum of fifty dollars ($50) and interest thereon at the rate of six (6 %) per cent. per annum from the date of such unlawful conversion."

It was alleged that these statements were false and published wantonly and maliciously to injure the plaintiff in his business and profession and that he had suffered damages in the amount of $25,000. Four causes of action were pleaded in the same complaint in which substantially the same language was used, but related to alleged conversions in several different years of different amounts, and judgment was demanded in the sum of $100,000. Separate demurrers were filed to each of the alleged causes of action.

It is the claim of counsel for the plaintiff that the word "feloniously" used in the counterclaim was not relevant, pertinent, or material to the issue involved; that the only relief asked for in the pleading is judgment for the amounts alleged to have been converted; that the counterclaim charged the commission of a crime, and that such a charge in no way enhanced the damages which might be recovered. It is argued that the fact that the language was used in judicial proceedings affords no defense, since at most it was only conditionally privileged and is actionable if malice is shown, which is admitted by the demurrer. It is conceded by counsel for the defendants that malice destroys conditional privi-

lege, even in judicial proceedings, but it is argued that the allegations complained of in this case were relevant and material, and having been made in the course of judicial proceedings were absolutely privileged, even though made maliciously and falsely. It is further argued at length that, in considering this question and in determining whether the language used in a pleading is relevant or pertinent, a liberal rule is to be adopted and the usual tests as to relevancy should not be applied.

It is generally accepted as the English rule that the privilege as to defamatory statements in pleadings is absolute, whether relevant and pertinent to the case or not, and that the same rule applies to counsel, parties, and witnesses. The following language was used in a leading case:

"For the purposes of my judgment, I shall assume that the words complained of were uttered by the solicitor maliciously, that is to say, not with the object of doing something useful towards the defense of his client; I shall assume that the words were uttered without any justification or even excuse, and from the indirect motive of personal ill-will or anger towards the prosecutor arising out of some previously existing cause; and I shall assume that the words were irrelevant to every issue of fact which was contested in the court where they were uttered; nevertheless, inasmuch as the words were uttered with reference to, and in the course of, the judicial inquiry which was going on, no action will lie against the defendant, however improper his behavior may have been." *Munster v. Lamb,* L. R. 11 Q. B. D. 588.

In *Maulsby v. Reifsnider,* 69 Md. 143, 14 Atl. 505, there is an interesting and careful analysis of the English decisions on this subject, and doubt is suggested whether the rule so broadly stated was supported by the decisions in that country.

Whatever may be the English rule, it is generally held in this country that parties, counsel, and witnesses are not in all cases absolutely exempted from liability for the use of defamatory words published or spoken in the course of judi-

cial proceedings; but that such exemption only exists where the statements are pertinent and relevant to the issues. *Jennings v. Paine,* 4 Wis. 358; *Schultz v. Strauss,* 127 Wis. 325, 106 N. W. 1066; *Keeley v. Great Northern R. Co.* 156 Wis. 181, 145 N. W. 664. See collection of cases in the following notes: 16 A. L. R. 746; 12 Ann. Cas. 1027; 22 L. R. A. 650. These notes contain many illustrations of oral and written statements which were held relevant and pertinent and the reverse. The words "relevant" and "pertinent" are those most frequently used in the decisions on this subject. But in other decisions such language is used as "pertinent and applicable," or "pertinent and material," or "pertinent and relative to." *Hoar v. Wood,* 3 Met. (44 Mass.) 193; *Schultz v. Strauss,* 127 Wis. 325, 106 N. W. 1066; *Maulsby v. Reifsnider,* 69 Md. 143, 14 Atl. 505; 17 Ruling Case Law, 336.

The question of relevancy in these inquiries is for the determination of the court and not for the jury. In considering whether allegations in a pleading are pertinent or relevant, it does not follow that the same tests are to be applied as on motions to strike out averments as irrelevant. Although most of the American courts do not follow the English rule, there seems good reason for a liberal interpretation of pleadings in actions of this kind, when the question of relevancy is involved and such a course is based on good authority. In Pennsylvania it is held that all doubts should be resolved in favor of relevancy. *Kemper v. Fort,* 219 Pa. St. 85, 67 Atl. 991, 13 L. R. A. N. s. 820, 12 Ann. Cas. 1022. In Minnesota the court applies the test: "Was the allegation so palpably wanting in relation to the subject matter of the controversy that no reasonable man could doubt its irrelevancy and impropriety?" *Burgess v. Turle & Co.* 155 Minn. 479, 193 N. W. 945; *Rolfe v. Noyes Bros. & Cutler, Inc.* 157 Minn. 443, 196 N. W. 481. In Nebraska it is held that on such an inquiry all doubts should be resolved in favor of relevancy and pertinency.

*Simon v. London G. & A. Co.* 104 Neb. 524, 177 N. W. 824. In a New York case it was held that if the allegation could possibly be pertinent or material the privilege is absolute. *Chapman v. Dick,* 197 App. Div. 551, 188 N. Y. Supp. 861. See, also, *Carpenter v. Grimes P. P. M. Co.* 19 Idaho, 384, 114 Pac. 42; *Ash v. Zwietusch,* 159 Ill. 455, 42 N. E. 854; *Gosewisch v. Doran,* 161 Cal. 511, 119 Pac. 656. Were the allegations of the counterclaim in the former action relevant and pertinent and therefore absolutely privileged within the meaning of the American rule on this subject?

The counterclaim would undoubtedly have stated a cause of action if the word "feloniously" had been omitted. It seems clear, also, that as framed the pleading imputed a criminal offense, although the exact nature of the offense cannot be ascertained from the record. The defendant in the former action may have intended to claim that the plaintiff had embezzled its money while in its service or that he had obtained it by false pretenses, or, as the plaintiff claims, the allegation may have been made wantonly and maliciously merely to injure the plaintiff.. The question before us is whether on any view which may be taken of the pleading the allegation was relevant or pertinent. When one person by an unauthorized act permanently deprives another of his property, that act is conversion. It may or may not be accompanied by and connected with some criminal act. If A. embezzles and appropriates to his use the money of B., the act is none the less conversion because there has been a criminal intent. Obviously B. may bring a civil action to indemnify himself. Nor do we think that in his pleading he should be confined to the naked statement that the defendant had unlawfully converted the money. In pleadings approved in standard books of forms we find that in actions for conversion the words "unlawfully converted and embezzled" are often found in the same clause. 1 Abbott's Forms of Pleading (2d ed.) pp. 1190, 1193, 1208.

This may not be very important. It only illustrates that the pleading in this case was little different from those commonly found in cases where it is claimed that the conversion was coupled with or part of some other wrongful act. We consider that if the counterclaim in question had made the direct charge of embezzlement and conversion, it would not properly be held that the allegation or any part of it was not pertinent or relevant. Nor do we think that any different rule should apply when the word "feloniously" is used and the criminal intent is less definitely stated. We shall make no attempt to review the many decisions on this subject, but an examination of the cases cited in the notes above referred to will show that generally, where the privilege has been denied, the statements or allegations objected to had no relation or reference to the real issues involved. In our opinion the word "feloniously" in the pleading in question did relate to the issues and had reference to them, and, within the rule that in cases of this kind the pleading should be liberally construed, was pertinent and relevant to the issues and therefore the pleading was absolutely privileged. In such a case, under the authorities already cited it is immaterial that the allegations are false and malicious.

There is good reason for such a rule that oral or written statements of parties, counsel, or witnesses, made in the course of judicial proceedings, should be liberally construed when they are the subject of actions for libel or slander. It is the true theory that in all litigation justice is the end to be sought. If parties are shadowed by the fear that by some mistake as to facts or some excess of zeal, or by some error of counsel, they may be subjected to harassing litigation in an action for slander or libel, they may well feel that justice is too dearly bought and that it is safest to abandon its pursuit. In actions arising out of torts and in criminal cases, lawsuits are not peace conferences, but battles. They are not physical contests like the wager of battle in ancient

times, but encounters in which feelings are often wounded and reputations are sometimes soiled. This is, of course, to be regretted, but as said by Mr. Chief Justice SHAW:

"The question, therefore, in such cases is not whether the words spoken are true, not whether they are actionable in themselves, but whether they were spoken in the course of judicial proceedings, and whether they were relevant and pertinent to the cause or subject of inquiry. And in determining what is pertinent, much latitude must be allowed to the judgment and discretion of those who are intrusted with the conduct of a cause in court, and a much larger allowance made for the ardent and excited feelings, with which a party, or counsel who naturally and almost necessarily identifies himself with his client, may become animated, by constantly regarding one side only of an interesting and animated controversy, in which the dearest rights of such party may become involved." *Hoar v. Wood,* 3 Met. (44 Mass.) 193.

And as was said by Mr. Justice TIMLIN in the case of *Keeley v. Great Northern R. Co.* 156 Wis. 181, 145 N. W. 664:

"But this courtesy cannot be enforced to the extent of excluding relevant matters from the consideration of the court, for we are not to suspend the search for relevant truth for the sake of courtesy. The paramount public interest here intervenes and overrides considerations of mere private right as between the parties. It is not out of tenderness to the calumniator or the bearer of false witness that the law regards certain communications as absolutely privileged. But public interest demands that complainants and suitors and their lawful representatives be at liberty to urge, before any legal tribunal having authority to decide, all matters relevant to the questions to be decided."

This does not mean, of course, that parties or their counsel can use judicial proceedings as a shield to recklessly and wantonly besmirch the character of third parties or opposing parties by oral or written statements having no relation to

the issues involved.   This is illustrated by the authorities already cited.

There was the statement in the complaint that the counter-claim in question was published in the newspapers.   But there was no allegation that the defendants were in any way responsible for, or connected with, the publication, and therefore this averment has no relevancy in the cause of action attempted to be stated.   *Gosewisch v. Doran,* 161 Cal. 511, 119 Pac. 656.

*By the Court.*—The order sustaining the demurrers is affirmed, and the cause is remanded for further proceedings according to law.